**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                  :

NICHOLAS E. PURPURA,          :       Civil Action No. 08-2974 (FLW)
                                 :

         Plaintiff, <u>pro se</u>,      :

                                 :

         v.                   :

                                 :          **OPINION**

BUSKIN, GAIMS, GAINS, JONAS & STREAM, :
MONASCH & STRAUSS, MONASCH, MOSS & :
STRAUSS, JEFFREY T. STRAUSS, WACHTEL :
& GOLD, WACHTEL & MASYR, LLP,     :
BARBARA MAIDA, LESTER SACKS,      :
RACHEL A. ADAMS, JANE & JOHN DOE,  :
                                 :

         Defendants.        :
_____:

<u>**WOLFSON, United States District Judge**</u>:

      Presently before the Court are motions by Defendants Jeffrey T. Strauss, Esq., Barbara

Maida, and the law firm of Wachtel & Masyr, LLP (collectively, "the Non-State Defendants")[1],

_____

     [1]Bushkin, Gaims, Gains, Jonas & Stream is a law firm with which Jeffrey T. Strauss was
formerly associated until 1987.  Strauss was a member of Monasch & Strauss and Monasch,
Moss & Strauss from 1987 through 1994.  In 1994, Strauss joined Gold & Wachtel, now known
as Wachtel & Masyr, LLP.  Aside from Wachtel & Masyr, the other named entities no longer
exist and Plaintiff makes no representations that these named defendants have been served.  In
his Amended Certification in Support of Motion to Dismiss, Strauss requests that Non-State
Defendants' Motion apply to the nonexistent entities.  The Court will apply the Motion to these
defendants accordingly.
     Plaintiff names the law firms of Bushkin, Gaims, Gains, Jonas & Stream, Monasch &
Strauss, Monasch, Moss & Strauss, Gold & Wachtel, and  Wachtel & Masyr as defendants in this
case, but fails to allege any claims against them.  Presumably, Plaintiff intends to assert a theory
of vicarious liability; specifically, Plaintiff wishes to hold each firm liable for the actions of its
employee, Defendant Strauss.  However, Plaintiff fails to make any such claims, nor does he
allege any facts which would enable him to make such claims in the future.  Therefore, Plaintiff's
claims against Bushkin, Gaims, Gains, Jonas & Stream, Monasch & Strauss and Monasch, Moss
& Strauss, Gold & Wachtel, and Wachtel & Masyr are dismissed.

and Judicial Hearing Officer Lester Sacks and the Honorable Rachel A. Adams (collectively, "the State Defendants"),[2] to dismiss Plaintiff Nicholas Purpura's ("Plaintiff" or "Purpura"), pro se, Complaint, pursuant to Fed. R. Civ. P. 12(b)(2) and (6), and 12(b)(1) and (6), respectively.  In his Complaint, Plaintiff alleges that Defendants participated in a conspiracy against him in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., by committing numerous acts of fraud and depriving him of his Constitutional rights stemming from his divorce from his ex-wife.[3]  For the reasons that follow, the Court grants Defendants' Motions to Dismiss in their entirety.

**I. Background and Procedural History**

Since Defendants move to dismiss Plaintiff Nicholas E. Purpura's ("Plaintiff" or "Purpura") claims pursuant to Fed. R. Civ. P. 12(b)(1), (2) and (6), the following version of events assumes Plaintiff's allegations to be true.  For the purposes of deciding this Motion, the Court will refer to Plaintiff's Complaint.  Because Plaintiff's Complaint does not sufficiently allege the facts upon which his claims are based, the Court refers to the facts set forth by the United States Bankruptcy Court for the Eastern District of New York, in In re Purpura, 170 B.R.

---

[2]Plaintiff's Complaint makes allegations against many other New York State judges and alleges corruption throughout the entire New York State Judiciary, but only the two State Defendants are named as defendants in this action.  See Compl. ¶¶ 19, 231, 232.  To the extent the State Defendants request that this Court's opinion extend to future claims, resulting in the prospective dismissal of Plaintiff's claims as against any and all additional Judges of the New York State Court system, that request is denied.  However, Plaintiff is cautioned that any future filing of time-barred or meritless claims may result in sanction.  See n. 22, infra.

[3]The district court has subject matter jurisdiction over this federal RICO action pursuant to 28 U.S.C. § 1331.

202 (Bankr. E.D.N.Y. 1994), to which both parties have referred, to understand the foundation of this action. From Plaintiff's numerous legal conclusions stated in his Complaint and the public record, the Court can discern that this instant case arises from a series of proceedings stemming from Plaintiff's divorce from his ex-wife, Defendant Barbara Maida ("Maida"), formerly Barbara Purpura. Plaintiff's claims appear to be based on events that occurred over the past two decades, during Purpura and Maida's extended matrimonial litigation in the New York State Courts.

 Purpura and Maida were married in July 1967 and, on July 2, 1985, Maida commenced a divorce action in the Supreme Court of New York, Richmond County. In re Purpura, 170 B.R. at 204. By order dated March 25, 1988, and "upon the consent of the parties and their respective attorneys" the matrimonial action was referred to a judicial hearing officer, defendant Lester Sacks ("Sacks"). Id. On September 13, 1990, Sacks granted the divorce and implemented the equitable distribution of assets, which was made after a "hotly contested, bitterly fought and protracted 10 day trial". Id. On January 31, 1991, Sacks issued an order supplementing and amending the divorce judgment. Id.

Purpura moved before the state court to stay enforcement of the divorce judgment, as supplemented and amended by the January 1991 Order, pending an appeal, but Purpura's numerous efforts were not successful in overturning Sacks' rulings. Id. at 205. By a decision and order dated May 24, 1993, the Appellate Division of the Supreme Court of the State of New York affirmed both Sacks' entry of the divorce judgment and the January 1991 Order. Id. On or about May 28, 1993, Purpura moved for leave to appeal the Appellate Division's decision and order to the Court of Appeals of the State of New York, but by order dated July 9, 1993 his motion for leave to appeal was denied by that state's highest court. Id. Thereafter Plaintiff

embarked upon a course of repetitive, meritless litigation in which he repeatedly tried to overturn the divorce decree.  Purpura v. Purpura, 17 A.D.3d 651, 652 (2d Dep't 2005) (denying Purpura's motion to vacate the divorce judgement and subsequent related orders and judgments on ground that trial court lacked "subject matter jurisdiction" and finding Plaintiff's repeated attacks "frivolous" and imposing costs, attorney's fees, and sanctions).  Purpura continued his appeals through March 23, 2006, at which time the Court of Appeals for the State of New York issued a final order denying Plaintiff's motion for a rehearing of his appeal.

On June 17, 2008, Plaintiff tried a new venue and court by filing the instant Complaint in this Court, alleging Defendants violated RICO, asserting seventeen "Claims for Relief," most of which are based in fraud, and seeking treble damages pursuant to Section 1964(c), punitive damages on all claims, fees and costs, the "reversal of all judgments related to monies issued by New York State Court's (sic) pursuant to the [un]clean hands doctrine, awarding pre-judgment and post-judgment interest on all amounts awarded to the fullest extent permitted by law or in equity," and any other relief the Court may deem proper.  Compl. at 88.

Plaintiff alleges that jurists in the Supreme Court, Richmond County, as well as at every level of the court system of the State of New York, including the Appellate Division, Second Department,[4] intentionally "engaged in the intentional denial of Complainant's civil rights and

---

[4]Plaintiff "has intentionally not named all the players in this 'enterprise' other than the original actors at the Trial Court level, adding only the new players to the 'enterprise' that entered in the year 2003 (Sacks and Adams) . . . [because] Sacks and Adams chose to aid and abet the prior fraud of Sacks and Maida and to make possible (sic) additional acts of fraud and 'unjust-enrichment.'"  Pl. Opp. Non-State Dfs. Br. at 2.  Because Plaintiff does not name any other judges as defendants in his Complaint or allege with any specificity that any other officer of the court was part of the alleged enterprise in his claims for relief, the other judges involved in Plaintiff's matrimonial action will not be considered as part of the enterprise or RICO claim here.

intentionally ignored each predicated criminal act."  Compl. ¶ 19.  Plaintiff further alleges that:
(i) the State Defendants acted without "subject-matter jurisdiction" to deny him due process and
equal protection, Id.; (ii) all of Defendants' repeated false and misleading factual statements were
made to deceive and manipulate the higher New York courts to defraud Complainant, Id. at 28;
(iii) the first act of fraud was formulated on November 13, 1990 at a court conference and
continued until December 20, 1999, and that he timely brought his claims before the State of
New York courts until the Court of Appeals for the State of New York issued a final Order dated
March 23, 2006, which failed to address Plaintiff's allegations that are raised here, Compl. at 10;
and (iv) Strauss and Maida, "with impunity, repeatedly misled the Courts by asserting materially
false and misleading . . . statements as if they were facts" and negligently omitted material facts,
which allowed Non-State Defendants to commit repeated acts of fraud.[5]  Compl. ¶ 38.

On September 16, 2008, the Non-State Defendants filed this Motion to Dismiss based
upon various legal grounds, i.e. Rules 8(a), 9(b), 12(b)(2) and (6).  On September 19, 2008, the
State Defendants filed their Motion to Dismiss on similar grounds, i.e. Rules 8(a), 12(b)(1) and
(6).  In addition, they argue that the Court lacks subject matter jurisdiction under the Eleventh
Amendment of the United States Constitution; and the claims against them are barred by absolute

---

[5]Specifically, Plaintiff alleges Strauss "committed fraud using creative accounting and
misrepresentation . . . to steal money from Complainant," Compl. ¶ 50; for example, Strauss
allegedly "submitted [to the court] three fraudulent schedules," which have "mysteriously
disappeared from the Court file."  See Id. ¶ 54.  Also, Purpura alleges that Defendants'
"intentional misrepresentation[s] and concealment of material fact[s to the state court], amounted
to constructive fraud."  Compl. ¶ 56.  Plaintiff also alleges that Strauss repeatedly submitted
"'Money Judgments' for a justice's signature that failed to conform to any decision and Order
issued.  Following each signature, defendant Strauss brazenly issued Restraining Orders illegally
to collect funds, using the U.S. Postal Service in violation of the Federal Mail Fraud statute, 18
U.S.C. (1982) (sic), carrying out the referenced scheme or artifice to extort monies from
Complainant."  Compl.  ¶ 38.

5

judicial, quasi-judicial and qualified immunity, and the Rooker-Feldman Doctrine.   The Court

grants Defendants' Motions for the reasons that follow.[6]


## II. Standards of Review

### A. Rule 8(a)

In determining the sufficiency of a complaint, the Court must be mindful to construe the

facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S.

519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir.1992).[7]  The Court should "accept as

true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn

therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion

School Dist., 132 F.3d 902, 906 (3d Cir.1997).  While a court will accept well-pled allegations as

true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or

sweeping legal conclusions cast in the form of factual allegations.  See Id.  "Federal Rule of Civil

Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader

is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests.'"  Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1964

---

[6]The Court notes that Plaintiff has submitted opposition to Defendants' motions.
However, the substance of his briefing reads much like his Complaint - brimming with
allegations rather than legal arguments.  As such, to the extent Plaintiff responds to any of the
legal contentions raised by Defendants, the Court will address them and his Complaint
concurrently.

[7]Further, the Court is obligated to construe pro se pleadings liberally.  Haines v. Kerner,
404 U.S. 519, 520 (1972); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2004) ("[The Court
will] apply the applicable law, irrespective of whether the pro se litigant has mentioned it by
name.").

(2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008).  The Third Circuit explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  This "does not impose a probability requirement at the pleading stage [ ]" but ... "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

<u>Id.</u> at 234 (internal citations omitted).

### B.  Rule 9(b)

Allegations of fraudulent concealment sufficient to toll the statute of limitations must meet the requirements of <u>Fed. R. Civ. P.</u> 9(b).  In <u>Lum v. Bank of Am.</u>, the Third Circuit expounded on the heightened pleading standard imposed on allegations of fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir.1984).  Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>Id.</u> (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations).  Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.  <u>See</u> [<u>Saporito v. Combustion Eng'g</u>, 843 F.2d 666, 675 (3d Cir.1988)]; <u>Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d 644, 658-59 (3d Cir. 1998); <u>Klein v. General Nutrition Cos.</u>, 186 F.3d 338, 345 (3d Cir.1999).

361 F.3d 217, 223-24 (3d Cir. 2004).

**C. Rule 12(b)(1)**

Both the State and Non-state Defendants move to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  When jurisdiction is challenged pursuant to Rule 12 (b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction.  Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings.  Id.  Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Id.

**D.  Rule 12(b)(2)**

"Once a defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  Cateret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir.1992).  "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir.2004); see also Carteret, 954 F.2d at 142 n. 1.  "If the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor."  4 Wright & Miller, Federal Practice and Procedure: Civil 3d § 1067.6 (3d ed. 2002).

"A federal district court may assert personal jurisdiction over a nonresident of the state in

which the court sits to the extent authorized by the law of that state." <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 436 (3d Cir.1987); <u>see also</u> <u>Fed. R. Civ. P.</u> 4(k). New Jersey's long-arm statute, embodied in New Jersey Court Rule 4: 4-4(c), "extends to the limits of the Fourteenth Amendment Due Process [Clause] protection." <u>Carteret</u>, 954 F.2d at 145. Accordingly, a court may exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

**E.  Rule 12(b)(6)**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  Recently, in <u>Bell Atlantic Corporation v. Twombly</u>, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id.</u> at 1968 (quoting <u>Conley</u>, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965.  As the Third Circuit has stated, "[t]he Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as

true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).


## III.  Statute of Limitations

As a preliminary matter, the Non-State Defendants argue that all but the Sixth and Seventh "Claims for Relief" appear to be time-barred because fraud claims are subject to a six-year statute of limitations in both New York, see New York Civil Practice Law and Rules, Section 213, and New Jersey.  See Hartford Accident and Indemnity Co. v. Baker, 208 N.J. Super. 131 (Law Div. 1985).  Because Plaintiff's claims arise out of RICO, the Court necessarily must employ the four-year statute of limitations provided by the Supreme Court, which relied upon the Clayton Act.  See Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 156 (1987).  However, the Supreme Court did not specify when the period begins, and three different interpretations arose.  As the Court analyzed the circuit splits, it narrowed the possible accrual rules, but did not articulate one alone.  See Rotella v. Wood, 528 U.S. 549, 555-559 (2000) (rejecting the "injury and pattern discovery rule" under which a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity); Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997) (rejecting the Third Circuit's "last predicate act rule," under which, the period began to run as soon as the plaintiff knew or should have known of the injury and the pattern of racketeering activity, but began to run anew upon each predicate act forming part of the same pattern).  In light of Rotella, two accrual rules

remained possible - an injury discovery rule, where the limitations period begins to run once a plaintiff discovers her injury, or an injury occurrence rule, where discovery is irrelevant; the Third Circuit applied an injury discovery rule "whereby a RICO claim accrues when plaintiffs knew or should have known of their injury."  Mathews v. Kidder Peabody & Co., 260 F.3d 239, 252 (3d Cir.2001).  The Third Circuit reaffirmed the injury discovery rule, which "has 'both subjective and objective' components and, with respect to the subjective, 'a claim accrues no later than when the plaintiffs themselves discover their injuries.'"  Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 507 (3d Cir. 2006) (citing Mathews, 260 F.3d at 252 ).

In this case, Plaintiff alleges that "unbeknownist to Complainant at the time, and not discovered until years later, these above acts of fraud were no mere "mistakes" by defendants Sacks, Strauss and Maida," yet, Purpura fails to assert when he learned of these "fraudulent acts." Compl. at 22.  However, Purpura concedes that he knew of the alleged injury when be began his appeals process in 1991, as he began raising these same arguments at that time.  Purpura alleges that he "continuously appealed defendant Strauss's and Maida's fraud, and [Sacks'] collusion with it to each level of the New York Court system in a timely fashion from 1991 through 2006." Compl. ¶ 65.  Because Purpura concedes that he knew of the alleged activity from the time he began suing Defendants in state court, this Court need look no further.  Plaintiff's own allegations make clear that he knew of the existence and source of his alleged injuries more than four years before he filed this action on June 17, 2008.  As such, all of Plaintiff's claims are time-barred.

Alternatively, Plaintiff argues that the statute of limitations has been tolled because he continued to raise these allegations of fraud and injury, stemming from the disposition of his

11

divorce litigation, in state trial and appellate courts and it is only now ripe for review by this Court.  Compl. at 10-11.  In this connection, Plaintiff argues that "the uninterrupted continuance of the original act of fraud at all time (sic) tolled the statute of limitations.  By law, Complainant could not bring an action for damages in Federal Court until the final appeals process was exhausted in the State of New York, which was finalized on March 23, 2006."  Compl. ¶ 36.[8]  It appears that Plaintiff argues that the Court should apply the abstention doctrine to equitably toll the statute of limitations.

Federal courts and state courts have concurrent jurisdiction over RICO claims, see Tafflin v. Leavitt, 493 U.S. 455 (1990), and "when that happens a federal court generally need neither abstain (i.e., dismiss the case before it) nor defer to the state proceedings (i.e., withhold action until the state proceedings have concluded)."[9]  See Growe v. Emison, 507 U.S. 25, 32 (1993) (internal citations omitted).  In this case, while Plaintiff alleges he raised the same issues of fraud in the New York State Court, he does not allege that he brought RICO claims.  Because Plaintiff's RICO claims alleged here were not raised in the state courts and he brought this action for the very first time in federal court, the statute of limitations cannot be tolled, nor would the court have held it in abeyance had Plaintiff brought the claims simultaneously.  Thus, all of Plaintiff's claims are time-barred.

_____

[8]It seems Plaintiff also argues that the limitations period should run from the time when the last predicate act that is part of the same pattern of racketeering activity occurred.  This rule has been rejected by the Supreme Court in Klehr.

[9]Abstention is not necessary for any of Plaintiff's claims.  See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814-817 (1976); Younger v. Harris, 401 U.S. 37 (1971); Railroad v. Comm'n of Texas v. Pullman Co., 312 U.S. 496, 501 (1941).

## IV. Discussion

### A. Judicial Immunity: Plaintiff's RICO Claims Again the State Defendants

As Plaintiff is proceeding in the present matter as a pro se litigant, the Court will read his Complaint liberally. Plaintiff's Complaint is a voluminous, meandering mass of venomous verbiage, attacking Defendants in what appears to be an alternative means to modify or overturn the divorce decree, a product of some unsubstantiated conspiracy between individuals, interacting in their professional capacities, whose sole purpose was allegedly to defraud Plaintiff of his property violation of RICO, 18 U.S.C. 1961, et seq.[10] Specifically, Plaintiff alleges "Complainant's divorce was the needed tool used as an 'enterprise' to aid and abet commission of numerous acts of fraud under the 'color of law,' to extort millions of dollars in retribution against Complainant for prior 'whistle-blowing' activity." Compl. ¶ 18. Plaintiff requests 17 different "Claims for Relief," nearly every one of which is headed as "Negligent Misrepresentation/Fraud and Deceit/Constructive Fraud" and all of which are indicated to be fraud claims.[11] Plaintiff's third, fourth, and sixth claims for relief are the only claims that even

---

[10]Plaintiff argues that he "is not re-litigating any State Court's decision! Instead, Plaintiff is using State Court documents from the record as "material evidence[.]" Pl. Opp. Non-State Dfs. Br. at 4. However, in Plaintiff's papers submitted to the Court with a variety of legal jargon and widely misapplied legal principles, he fails to allege any actionable claims.

Moreover, if Plaintiff had been trying to seek modification of his divorce decree here, this Court would not have jurisdiction. See Matusow v. Trans-County Title Agency, LLC, No. 07-2148, 2008 WL 4590683, at *3 (3d Cir. March 28, 2008) (the domestic relations exception divests the federal courts of diversity jurisdiction).

[11]Plaintiff fails to specify the misrepresentations allegedly made by each of the several different defendants, nor does he plead that he relied upon such misrepresentations, nor does he particularize just how any of the captioned defendants allegedly perpetrated a fraud. However, these general allegations of fraud, even if true, are not predicate acts sufficient to plead RICO. See IV.B, infra.

attempt to allege mail and/ or wire fraud.  In addition, Plaintiff repeatedly alleges that the State

Defendants, Judge Adams and Sacks, acted absent subject-matter jurisdiction and colluded with

Non-State Defendants to defraud him.  The State Defendants argue that Plaintiff fails to state a

cause of action against State Defendants or properly plead a claim under Civil RICO pursuant to

Rules 8, 12(b)(1) and (6), that the Court lacks subject matter jurisdiction under the Eleventh

Amendment of the United States Constitution, and Plaintiff's claims against State Defendants are

barred by absolute judicial, quasi-judicial and qualified immunity, and the Rooker-Feldman

Doctrine.[12]

The State Defendants contend that the Eleventh Amendment to the United States

Constitution bars suit in federal court for relief against a State by a private citizen absent the

State's consent or specific Congressional abrogation of the immunity.  See Seminole Tribe of

Florida v. Florida, 517 U.S. 44 (1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89,

100 (1984).  Absent a waiver on the part of the state or a valid congressional override, state

officials acting in their official capacities, may not be sued in federal court by private individuals.

See Bowers v. The Nat'l College Athletic Assoc., 475 F.3d 524, 550 (3d Cir. 2007); Garcia v.

State Univ. of New York Health Scis. Ctr. of Brooklyn, 280 F.3d 99, 107 (2d Cir. 2001).

---

[12]Because the Court finds that Plaintiff's claims against the State Defendants are barred
by the Eleventh Amendment and absolute judicial immunity, the Court need not reach the merits
of the other defenses the State Defendants set forth.  However, even if the Court were to look at
the merits of his claims, Plaintiff fails to state a claim pursuant to Rule 12(b)(6).  See IV.B, infra.
 In addition, the parties do not argue choice of law principles.  The Court notes that
Plaintiff's claims against the State Defendants are barred by judicial immunity as explicated by
the Supreme Court, and which has been similarly applied by the Second and Third Circuits.  See
Glavin v. Restaino, 210 Fed. Appx. 122, 123-24 (2d Cir. 2006) (citing Stump, 435 U.S. 349
(1978)); See Figueroa v. Blackburn, 39 F. Supp. 2d 479, 484 (D.N.J. 1999), aff'd, 208 F.3d 435
(3d Cir. 2000).

Plaintiff argues that he is suing individuals, although employed as officials of the State of New York, did not act for the State in violation of federal law and, thus should be stripped of their official or representative capacities.  See Pl. Opp. State Dfs. Br. ¶¶ 13, 17-18.  However, contrary to Plaintiff's assertion, the State Defendants were clearly acting in their official judicial capacities.  Accordingly, Plaintiff's claims are barred by the Eleventh Amendment.

The State Defendants also contend that all of Plaintiff's claims fall within the ken of absolute judicial immunity.  See Figueroa v. Blackburn, 39 F. Supp. 2d 479, 484 (D.N.J. 1999), aff'd, 208 F.3d 435 (3d Cir. 2000) ("It is a well-established principle of Angelo-American jurisprudence that judges are generally afforded absolute immunity from civil suits for money damages") (citations omitted).  The protection of judicial immunity, though ostensibly for the protection of judges, is in fact "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences."  Pierson v. Ray, 386 U.S. 547, 554 (1967) (internal quotation marks omitted).  "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits."  Forrester v. White, 484 U.S. 219, 226-27 (1988).

Courts have repeatedly emphasized the extensive scope of judicial immunity, holding that immunity applies "'however injurious in its consequences [the judge's action] may have proved to the plaintiff'."  Gallas v. Supreme Court, 211 F.3d 760, 769 (3d Cir. 2000) (quoting Cleavinger v. Saxner, 474 U.S. 193, 199-200)).  "Disagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity. . . . The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit."

15

Stump, 435 U.S. at 363-64.  Further, highlighting its expansive breadth, the court explained  "the

public policy favoring the judicial immunity doctrine outweighs any consideration given to the

fact that a judge's errors caused the deprivation of an individual's basic due process rights."

Figueroa, 39 F. Supp. 2d at 495.

The doctrine, albeit expansive, is not without its limits.  In Figueroa, the court outlined

judicial immunity and its two exceptions as:

> Though the sweep of judicial immunity is broad, Barnes v. Winchell, 105 F.3d
> 1111, 1115 (6th Cir. 1997) (citations omitted), there are two sets of circumstances
> which circumscribe the doctrine.  First, a judge is not afforded judicial immunity
> from civil liability for any nonjudicial acts, i.e., actions taken when the judge was
> not operating in her judicial capacity.  [Mireles v. Waco, 502 U.S. 9, 11 (1991);
> Forrester v. White, 484 U.S. 219, 227-29 (1988); Stump v. Sparkman, 435 U.S.
> 349, 360 (1978).]  Second, even if the act is judicial in nature, a judge is not
> immune for any actions taken in the "complete absence of all jurisdiction."
> Mireles, 502 U.S. at 12; Stump, 435 U.S. at 357.  Thus, if [a judge's] actions were
> judicial actions not taken in the complete absence of all jurisdiction, she must be
> afforded protection from [a plaintiff's] civil suit.

Figueroa, 39 F. Supp. 2d at 485-86.  To summarize the very narrow exception to the judicial

immunity doctrine:

> [O]ur cases make clear that [judicial] immunity is overcome in only two sets of
> circumstances.  First, a judge is not immune from liability for nonjudicial actions,
> i. e., actions not taken in the judge's judicial capacity.  Forrester, 484 U.S. at 227-
> 229; Stump v. Sparkman, 435 U.S. at 360.  Second, a judge is not immune for
> actions, though judicial in nature, taken in the complete absence of all jurisdiction.
> Id. at 356-357; Bradley v. Fisher, 13 Wall. at 351.

Mireles, 502 U.S. at 10-12.  The State Defendants contend that their actions were judicial in

nature, as well as within their jurisdiction, and thus protected by judicial immunity.  See Id.

The Supreme Court has established a "two-prong test to determine whether an act is

'judicial,' and therefore subject to immunity."  Cavanagh v. Fayette County, No. 05-1182, 2006

16

U.S. Dist. LEXIS 10483, at *5 (W.D. Pa. Feb. 27, 2006) (citing Stump, 435 U.S. at 362).  The

Cavanagh court explained:

> First, the court must consider whether the act in question is a function that is
> "normally performed by a judge."  [Stump, 435 U.S. at 362.]  Under this
> "functionality" inquiry, a court is required to examine the nature and function of
> the act, rather than the act itself.  Mireles, 502 U.S. at 13.  Even if a particular act
> is not a function normally performed by a judge, the court must look to the
> particular act's relation to a general function normally performed by a judge.  Id.
> Second, in determining whether an act is "judicial," the court must assess the
> parties' expectations, and whether they dealt with the judge in his or her judicial
> capacity.  Stump, 435 U.S. at 362.  "Paradigmatic judicial acts" are those that
> involve "resolving disputes between parties who have invoked the jurisdiction of
> a court."  Forrester v. White, 484 U.S. 219, 227, 98 L. Ed. 2d 555, 108 S. Ct. 538
> (1988).

2006 U.S. Dist. LEXIS 10483 at *5-6; see also Mireles, 502 U.S. at 13 ("[T]he relevant inquiry is

the 'nature' and 'function' of the act, not the 'act itself.'  In other words, we look to the particular

act's relation to a general function normally performed by a judge."); Trueman v. City of Upper

Chichester, No. 04-5085, 2005 U.S. Dist. LEXIS 23672, at *3 (E.D. Pa. Oct. 12, 2005), aff'd, No.

07-2762, 2008 U.S. App. LEXIS 17767 (3d Cir. July 23, 2008).

Actions taken by a judge, judicial or otherwise, will not fall within the scope of judicial

immunity if they are taken in the "complete absence of all jurisdiction."  Mireles, 502 U.S. at 12.

Jurisdiction, however, "is to be interpreted broadly."  Cavanagh, 2006 U.S. Dist. LEXIS 10483 at

*9 (citing Stump, 435 U.S. at 357).  "[A]cts that are merely 'in excess of jurisdiction' are covered

by absolute immunity."  Cavanagh, 2006 U.S. Dist. LEXIS 10483 at *9 (citing Barnes v. Winchell,

105 F.3d 1111, 1116 (6th Cir. 1997)).  The Cavanagh court elaborated:

> "[A] judge acts in excess of jurisdiction if the act complained of is within his general
> power of jurisdiction but is not authorized because of certain circumstances,"
> whereas there "is a clear absence of jurisdiction when a court of limited jurisdiction
> attempts to adjudicate a case outside of its jurisdiction. . . ."  Duty v. City of

17

Springdale, 42 F.3d 460, 462 (8th Cir. 1994) (quotations omitted). The commission of grave procedural errors does not convert legitimate judicial action into action taken in the clear absence of jurisdiction. Stump, 435 U.S. at 359. The "erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act," likewise does not render immunity inapplicable. Id.

The "absence of jurisdiction" inquiry focuses on jurisdiction over subject matter, rather than over the person or geography: "'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" Figueroa v. Blackburn, 208 F.3d 435, 444 (3d Cir. 2000) (citing Winchell, 105 F.3d at 1122). As a result, "when . . . a court with subject matter jurisdiction acts where . . . personal jurisdiction is lacking, judicial…absolute immunity remain[s] intact." Stern v. Mascio, 262 F.3d 600, 607 (6th Cir. 2001). The operative inquiry is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him." Stump, 435 U.S. at 356.

2006 U.S. Dist. LEXIS 10483 at *9-11. Moreover, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, [nor] if his exercise of authority is flawed by the commission of grave procedural errors." Stump, 435 U.S. at 356.

In his Complaint, in an attempt to allege the State Defendants' involvement in his RICO claim, Plaintiff accuses the State Defendants of "recklessly issuing 'reports' and 'Orders' that intentionally misrepresented the true facts surrounding each of their decisions. Each finding negligently omits material facts in order to aid and abet in 'constructive' fraud." Compl. ¶ 48. As previously stated, judicial immunity extends to all the aforementioned judicial acts alleged by Plaintiff. The analysis of whether an act qualifies for judicial immunity "must focus on the general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." Gallas, 211 F.3d at 769 (3d Cir. 2000); see also Mireles, 502 U.S. at 13 (citation omitted). Furthermore, "[judicial immunity] applies even if the Judge is acting as part of an alleged conspiracy." Trueman v. City of Upper Chichester, No. 04-

18

5085, 2005 U.S. Dist. LEXIS 23672, at *3 (E.D. Pa. Oct. 12, 2005), aff'd, No. 07-2762, 2008

U.S. App. LEXIS 17767 (3d Cir. July 23, 2008) (quoting Dennis v. Sparks, 449 U.S. 24 (1980)).

Thus, Judge Adams and Sacks' involvement in an alleged RICO conspiracy will not defeat a

claim of judicial immunity in the instant matter; even if, as Plaintiff alleges, State Defendants

"acted with 'deliberate indifference' to ignore defendants' wrongdoings[,]" namely fraud and

perjury.  Pl. Opp. Non-State Dfs. Br. at 9.  Irrespective of alleged malice or bad faith, judicial

immunity extends to these actions as they are within the State Defendants' jurisdiction and are of

a judicial nature.

Plaintiff alleges, inter alia, that Sacks issued four prospective decisions, all lacking

subject-matter jurisdiction, for the purpose of defrauding and depriving Plaintiff of his assets.

Compl. ¶¶ 41, 48.  In this case, Plaintiff concedes that the State Defendants had the jurisdiction

to preside over this matrimonial action.[13]  See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S.

1, 12 (2004) ("The whole subject of the domestic relations of husband and wife, parent and child,

belongs to the laws of the States and not to the laws of the United States.").  In his conclusory

allegations, Plaintiff fails to articulate any logical reason to find that State Defendants acted

absent all jurisdiction.[14]  None of these alleged actions, even if done with pure malice, fall

---

[13]Plaintiff concedes that "Defendants Sacks and Adams might have had jurisdiction to preside over a matrimonial action[.]"  Pl. Opp. State Dfs. Br. at 7.

[14]Plaintiff argues that State Defendants "lacked subject-matter jurisdiction to hear the issue before them, to 'hear and determine' the appropriateness of his (Sacks's) prior decisions." Plaintiff states that "Defendant Adams lacked 'subject-matter jurisdiction to usurp legislative authority and assign Sacks to do so.  Both defendants lacked 'subject-matter jurisdiction' to overturn the ruling of an Appellate court that established 'law of the case' or precedent set by the State's highest court, the Court of Appeals, on the issue before him."  Pl. Opp. State Dfs. Br. ¶ 23.

outside the province of Judge Adams' and Sacks' jurisdiction.[15]   Therefore, these allegations too

are without merit.

Furthermore, even assuming the State Defendants wholly disregarded settled judicial

principles and New York law when conducting the aforementioned acts,[16] the well-settled

doctrine of judicial immunity would still shield Judge Adams and Sacks from liability.

Accordingly, all of the State Defendants' actions alleged in the Complaint were judicial in nature

and within their jurisdiction, and thus protected by absolute judicial immunity.


**B.  Plaintiff's RICO Claims Against Non-State Defendants**

To properly plead under RICO, a Plaintiff must allege "'(1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity' as well as an injury resulting from the conduct

constituting a violation."  Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc., 87 Fed. Appx.

227, 231 (3d Cir. 2003) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  The

RICO Act "provides for liability in civil suits brought by any person injured 'in his business or

property' by a RICO violation, with a compulsory award of treble damages, costs, and attorneys

fees. . . [and] makes it unlawful for 'any person' who is employed by or associated with 'any

---

[15]For example, Plaintiff claims that "Defendant Adams's unlawful behavior occurred
between 2003 until 2005, when Adams was assigned to the matter.  Adams was assigned to
revisit prior orders to determine whether they had been appropriate.  Thereafter, in absence of
subject-matter jurisdiction, Adams immediately usurped the authority of New York State's
statutes in order to deny Plaintiff procedural 'due process' and 'equal protection.'" Pl. Opp. State
Dfs. Br. ¶ 34.

[16]Plaintiff claims that State Defendants are not protected by judicial immunity because
they allegedly failed to comply with the Administrative Justice's order to review Sacks' October
14, 1986 Order.  Pl. Opp. State Dfs. Br. ¶¶ 36-37.

enterprise' affecting interstate commerce to 'participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'"  Genty v. Resolution Trust Corp., 937 F.2d 899, 906 (3d Cir. 1991) (citations omitted).  A RICO claim requires proof of four elements:

> (1) the existence of an enterprise affecting interstate commerce; (2) that Defendants were employed by or associated with the enterprise; (3) that the Defendants participated, directly or indirectly, in the conduct or affairs of the enterprise; and (4) that the Defendants participated through a pattern of racketeering activity that must include the allegation of at least two (2) racketeering acts.

Zellner v. Monroe County Mun. Waste Mgmt. Auth., No. 07-1976, 2008 U.S. Dist. LEXIS 57769, at *19-20 (M.D. Pa. July 28, 2008) (citation omitted).

Non-State Defendants move the Court to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(2) and 12(b)(6), arguing that the Complaint is without any legal basis or justification.[17]

**1. Enterprise**

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  A RICO enterprise is "an entity made up of a group of persons associated together for the common purpose of engaging in a course of conduct."  United States v. Turkette,

---

[17]The Court denies the Non-State Defendants's Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) because Plaintiff established a prima facie case of personal jurisdiction for the purposes of determining this Motion.

Further, the Non-State Defendants argue that Plaintiff's pleading is so baseless and infirm that leave to amend must be denied pursuant to Rule 15(a).  Because Plaintiff has not moved to amend pursuant to Rule 15(a), the Court will not make such a ruling at this time; however, it appears that nothing in Plaintiff's filings suggests that deficiencies in his claims may be cured by amendment.

452 U.S. 576, 583 (1981).  To establish the existence of an "enterprise," a plaintiff must allege that (1) the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) the members of the enterprise function as a continuing unit with established duties; and (3) the enterprise must be separate and apart from the pattern of activity in which it engages.  Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 789-90 (3d Cir. 1984).  Purpura alleges that the Non-State Defendants "constituted an 'enterprise' as defined in Title 18, United States Code, Section 1961 (4), to wit, a group of individuals associated in fact," with the intent "to defraud Complainant by obtaining, or aiding in obtaining payments, or allowance of fraudulent or false claims illegally to take Complainant's assets (stock, stock dividends, case, monies earned, and home)."  Compl. ¶¶ 31-32.  Purpura, however, fails to articulate any detail concerning the nature and extent of the alleged fraudulent scheme and the role played by each Defendant in the scheme.[18]  Instead, Plaintiff alleges that, on one hand, Strauss made continuous material omissions and misleading statements to deceive the court, Compl. at 48, and, on the other hand, Purpura alleges that the court was involved in the scheme, aiding in the acts of fraud by intentionally disregarding Purpura's evidence.[19]  Id. at 18.

---

[18]Cf. Perlberger v. Perlberger, No. 97-4105, 1998 WL 76310, at *5 (E.D. Pa. 1998) (finding that the plaintiff sufficiently plead an enterprise where she alleged that a group of five individuals and two professional corporations were the persons liable and the enterprise was the association-in-fact of those persons).  Moreover, in Perlberger, the plaintiff alleged that after the divorce she learned that the named defendants had devised and perpetuated a fraudulent scheme whereby her husband was able to conceal, by half, the true value of his income from both plaintiff and the state divorce court.  See Id. at *2.  In the instant case, Plaintiff makes conclusory allegations that Defendants were an association-in-fact, without any support of their scheme or intent to work together to defraud him.  Therefore, he fails to articulate that there was an enterprise pursuant to 18 U.S.C. § 1961(4).

[19]In the instant case, Plaintiff makes legal conclusions that the Non-State Defendants engaged in a "pattern of racketeering" with one another for the purpose of "furthering their

Purpura fails to articulate any organization, framework, or superstructure implemented to defraud him of money, but rather charges Defendants with the advocacy and decision-making powers within their job descriptions.  Therefore, the Court finds that Plaintiff fails to allege an enterprise existed.

### 2. Racketeering Activity

In addition, to properly allege a RICO violation, a plaintiff must articulate a pattern of racketeering activity, i.e., predicate acts.[20]  See Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc., 87 Fed. Appx 227, 231 (3d Cir. 2003) (citations omitted).  The claim "must include the allegation of at least two (2) racketeering acts."  Zellner, 2008 U.S. Dist. LEXIS 57769, at *20.  When fraud is the predicate act, a plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002).  Specifically, Rule 9(b) states "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007), the Third Circuit qualified what information is required to be

---

common scheme to defraud monies and other assets belonging to Complainant."  Compl. ¶¶ 44-46.  Purpura alleges that Strauss made materially false and misleading statements of fact or omitted facts to the court to commit fraud.  Id. at 26.  Purpura also alleges that Strauss "would issue 'Restraining Orders' to collect these fraudulent[ly issued by the court] funds using the U.S. Postal Service."  Id.  Thus, Purpura's own allegations contradict his theory of the case.

[20]"To set out a prima facie showing of a civil RICO violation under 18 U.S.C. § 1964(c), a plaintiff must have been injured by 'racketeering activity,' 18 U.S.C. § 1962(c)-(d).  'Racketeering activity' is defined as a violation of certain enumerated statutes - commonly known as 'predicate acts' - in 18 U.S.C. § 1961(1)."  Breslin v. Brainard, 128 Fed. Appx. 237, 240 (3d Cir. 2005); see also Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005) ("The term 'racketeering activity' is defined in 18 U.S.C. § 1961(1) to include a long list of state and federal crimes, among them the wire fraud alleged here."); see generally 18 U.S.C. §§ 1341, 1343.  The Third Circuit permits federal common law or "garden variety" fraud, including mail and wire fraud.  Tabas v. Tabas, 47 F.3d 1280, 1290 (3d Cir.), cert. denied, 515 U.S. 1118 (1995).

alleged to satisfy the heightened pleading standard provided for by Rule 9(b):

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. See Id. at 224.

Frederico, 507 F.3d at 200; see also Seville Industrial Machinery Corp., 742 F.2d at 791.

General allegations, such as fraud and theft, will not satisfy the pleading standard as they are "not included as [specifically listed] racketeering activit[ies] pursuant to 18 U.S.C. § 1961(1)." Zellner, 2008 U.S. Dist. LEXIS 57769 at *23. Examples of predicate acts include "state felonies punishable by imprisonment of more than a year such as murder, kidnaping, gambling or extortion, as well as more than thirty federal crimes, such as drug offenses, obstruction of justice, obscenity, and mail, wire, bankruptcy, and securities fraud." Genty, 937 F.2d at 907; see also 18 U.S.C. § 1961(1). In Zellner, the court found that general allegations of fraud and theft should be dismissed as potential predicate acts because the statute "lists specific acts, such as mail fraud and wire fraud" as racketeering activity and does not list general fraud. 2008 U.S. Dist. LEXIS 57769 at *23. Thus, because Purpura merely alleges general conclusions of fraud, such as Strauss' alleged intentional misrepresentations and concealment of material facts to the court, in his first, second, fifth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth claims for relief, the Court dismisses these claims.

In Plaintiff's third, fourth, and sixth claims for relief, he attempts to allege "predicate" acts of fraudulently misleading the court, leading to mail and wire fraud. "Where acts of mail

and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the

heightened pleading requirement of Rule 9(b)."  Warden, 288 F.3d at 105 (citing Rolo v. City

Investing Co. Liquidating Trust, 155 F.3d 644, 657-58 (3d Cir.1998)).  The court in Annulli v.

Panikkar addressed the differential pleading nature of mail and wire fraud:

> There are two elements of a mail or wire fraud charge: "(a) a scheme to defraud,
> and (2) a mailing or wire in furtherance of that scheme."  Greenberg v. Brewster,
> 816 F. Supp. 1039, 1049 (E.D. Pa. 1993). Wholly intrastate use of the mails for
> fraud violates the mail fraud statute.  See, e.g., In re Burzynski, 989 F.2d 733, 742
> (5th Cir. 1993).  In contrast, the federal wire fraud statute requires interstate use of
> the wire.  See, e.g., Smith v. Ayres, 845 F.2d 1360, 1366 (5th Cir. 1988) ("As
> several courts have recognized, the statute requires that the wire communication
> cross state lines.").

200 F.3d 189, 200 n. 9 (3d Cir. 1999); see also Zellner, 2008 U.S. Dist. LEXIS 5776 at *22-23

(citing Stanley v. Int'l Bhd. of Elec. Workers, AFL-CIO CLC, 207 Fed. Appx. 185, 189 (3d Cir.

2006)) (internal quotations omitted) ("[T]he wire fraud statute, 18 U.S.C. § 1343, 'criminalizes a

scheme to defraud that is transmitted by wire 'in interstate or foreign commerce'; thus, a

complaint must allege interstate use of the wire for each predicate act.").  Moreover, when

asserting mail fraud allegations, a plaintiff must "identify the purpose of the mailing within the

defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker

and content of the alleged misrepresentations."  Annulli, 200 F.3d at 201 n. 10.  In other words,

the plaintiff's pleading must contain the "who, what, when and where details of the alleged

fraud."  Bonavitacola, 87 Fed. Appx. at 231 (quoting Allen Neurosurgical Assoc., Inc. v. Lehigh

Valley Health Network, No. 99-4653, 2001 WL 41143 (E.D. Pa. Jan. 18, 2001)).

   Accordingly, this Court will only consider as predicate racketeering acts those wire frauds

which have been alleged to have been transmitted by wire "in interstate or foreign commerce"

and those mail frauds that are alleged to have made use of the United States Postal Service.  See
Zellner, 2008 U.S. Dist. LEXIS 57769 at *23 ("As these . . . frauds were not properly plead, the
Court will not consider them as 'predicate acts.'").  Further, this Court will only consider as
predicate racketeering acts those mail and wire frauds alleged with the specificity required by the
heightened pleading standard of Rule 9(b).

In his third claim for relief, Purpura alleges mail fraud.  He states "the State Courts of
New York repeatedly, continuously consistently, and intentionally overlooked a disproportionate
number of illegal incidents of fraud and repeatedly ruled absent subject matter jurisdiction . . .
aided by defendant Sacks, that defendants Strauss and Maida, with impunity, mislead the courts
to commit fraud. . . . [Strauss] personally prepared, for a judge's signature . . . [which, after
signed] Strauss would issue 'Restraining Orders' to collect these fraudulent funds using the U.S.
Postal Service."  Compl. at 30.  Purpura alleges that, on December 15, 1986, Strauss mailed a
letter to Purpura's attorneys, which he alleges contained false claims and statements about him,
specifically that Purpura "fail[ed] and refus[ed] to pay retroactive maintenance and child
support," in an attempt to get monies from Purpura.[21]  Compl. ¶ 82.  Purpura claims that "at no
time did [he] ever refuse to pay maintenance or children support."  Id. ¶ 83.  Although it appears
that Purpura sufficiently alleges the required specificity, the letter mailed to Purpura's attorneys
does not appear in furtherance of the Non-State Defendants' scheme to defraud Plaintiff.  See

_____

[21]Purpura also alleges that letter was hand delivered to his employer, Bear Stearns & Co.
Inc.  Compl. ¶ 82.  It appears that Purpura alleges that the hand delivered letter to his then place
of business Bear Stearns & Co. Inc. was the document in furtherance of Non-State Defendant's
scheme to "mislead the courts to commit their fraud."  Compl. at 31.   Even if this letter to his
employer was in furtherance of the alleged scheme, as it was hand-delivered, it cannot constitute
mail fraud.

Marangos v. Swett, No. 07-5937, 2008 WL 4508542, at *9 (D.N.J. September 28, 2008).

Even if, however, the facts alleged in Plaintiff's third claim for relief were in furtherance of Defendants' scheme and are sufficient to allow the Court to "otherwise inject precision or some measure of substantiation into a fraud allegation," it is unnecessary for the Court to continue its analysis as to whether this communication constitutes mail fraud.  "A 'pattern of racketeering activity means' at least two predicate acts that 'are related and that amount to or pose a threat of continued criminal activity.'"  Bonavitacola, 87 Fed. Appx at 231 (quoting H. J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)).  Plaintiff fails to sufficiently allege two predicate acts as required by RICO, as discussed herein.

In his fourth claim for relief, Purpura alleges mail and wire fraud.  Plaintiff alleges that "Defendant Strauss repeatedly convicts himself of deceit, misrepresentation. See, Exhibit (sic) a wire faxed from the law firm of 'Monash & Strauss' and a signed letter by defendant Strauss, forwarded by the U.S. Postal service (sic) a letter, to Complainant's attorney Sidney Siller, Esq." Compl. ¶ 95.  Purpura alleges that "Defendant Strauss intentionally misled the Courts about the true facts surrounding the Appendix, presenting the covers as if only the Complainant had appealed."  Compl. ¶ 94.  Plaintiff appears to allege that there was a printing error that should have included the word "joint" appendix and Plaintiff was forced to make an application for 50% of the costs of the joint appendix, which Strauss and Maida had agreed to pay.  Id. ¶¶ 95-96, 99. Because Purpura concedes that Defendants' acts occurred in the state of New York, see Compl. ¶ 10, and he does not allege that there any interstate or foreign commerce, the Court need not analyze these wire fraud allegations.  See Annulli, 200 F.3d at 200 n. 9.  Further, even though Purpura states that Strauss signed a letter forwarded by the mail, Purpura fails to plead the level

27

of specificity required by the heightened pleading standard of Rule 9(b).  It is impossible for this Court to discern the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation" of the communications between Defendants.  See Frederico, 507 F.3d at 200.  Therefore, Plaintiff's fourth claim for relief fails to allege a predicate act.

In his sixth claim for relief, Purpura alleges that the State Defendants aided and abetted the Non-State Defendants in committing "constructive" fraud because Sacks and Judge Adams allegedly "recklessly issued 'reports' and 'Orders' that intentionally misrepresented the true facts surrounding each of their decisions."  Compl. ¶ 113.  In this claim, through a very liberal reading, Purpura appears to attempt to allege mail fraud when he mentions that the "Trial Transcript of the hearing on dated (sic) March 9, 2004 shows defendant Strauss was not present and his Cross-motion which was submitted through the mail, using the U.S. Postal Service (sic)."  Compl. at 47.  Purpura, however, does not plead the heightened specificity as required by Rule 9(b).  See Bonavitacola, 87 Fed. Appx. at 231.  Therefore, Plaintiff's sixth claim for relief fails to allege a predicate act.

Upon a liberal construction of Plaintiff's voluminous Complaint, this Court can discern only one communication that arguably rises to the level of specificity needed to satisfy 9(b)'s heightened pleading requirement, Plaintiff's third claim for relief; at best, Plaintiff alleges one predicate act of mail fraud in which Strauss mailed a letter to Purpura's then attorneys with allegedly false information.  Compl. ¶¶ 82, 83.  Thus, Plaintiff has failed to plead two predicate acts of mail or wire fraud sufficient to constitute a pattern of racketeering activity.  Accordingly, Plaintiff does not sufficiently allege his RICO claims.  Plaintiff is unable to state a claim upon

which relief may be granted, and therefore his Complaint must be dismissed pursuant to Rule 12(b)(6).

### C. Additional Relief

The Non-State Defendants request that this Court impose sanctions on Plaintiff by deeming him a vexatious litigant.  Pursuant to 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceeding in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."  The Third Circuit has held that this Court has the inherent authority to impose sanctions on a pro se litigant.  See Institute for Motivational Living, Inc. v. Doulos Institute for Strategic Consulting, Inc., 110 Fed. Appx. 283, 287 (3d Cir. 2004).  In this case, Purpura has filed similar claims against the same defendants in New York State Courts.  All of these previous actions, relating to Purpura and Maida's divorce, were resolved against Plaintiff.

In this connection, the Non-State Defendants request that the Court enjoin Purpura from bringing additional claims in federal court in the future.[22]  Because it appears that this is the first time Purpura has filed an action in the District of New Jersey, the Court does not find that Plaintiff's actions here rise to the level of "multipl[ying] the proceedings in an unreasonable and vexatious manner" for the imposition of sanctions.  Inst. for Motivational Living, Inc. v. Doulos

---

[22]In his Complaint, Purpura indicates that he intends to bring another action in this Court under 42 U.S.C. § 1983 because Defendants allegedly violated his Fifth and Fourteenth Amendment rights.  See Compl. at 17, 63, 68, 77, 79, 87.  Plaintiff is on notice that he cannot piecemeal pick his causes of action and any future claims against Defendants arising out of this matrimonial litigation appear time-barred by the statute of limitations for section 1983 claims. See Soni v. Holtzer, 255 Fed. Appx. 614, 617 (3d Cir. 2007) (noting that statute of limitations for section 1983 claims accruing in New York was three years and in New Jersey was two years).

Inst. for Strategic Consulting, 110 Fed. Appx. 283, 287 (3d Cir. 2004).  Thus, the Non-State

Defendants' request for sanctions against Purpura for bringing this action and an injunction from

commencing future lawsuits is denied at this time.  However, the Court cautions Plaintiff that

should he file additional frivolous claims stemming from his matrimonial litigation, in this Court,

I will not hesitate to impose sanctions, pursuant to this Court's inherent power to protect the

courts from oppressive and frivolous litigation.  See 28 U.S.C. § 1651(a); Hollis-Arrington v.

PHH Mortg. Corp., No. 05-2556, 2005 WL 3077853, at *9 (D.N.J. November 15, 2005), aff'd in

part, vacated in part, 205 Fed. Appx. 48 (3d Cir. 2006).


**V. Conclusion**

For the foregoing reasons, Plaintiff's claims are dismissed.


Dated November 18, 2008                    /s/ Freda L. Wolfson_____
                                           Honorable Freda L. Wolfson
                                           United States District Judge